**SO ORDERED.**

**SIGNED this 11 day of February, 2011.**



_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion Designated for Print Publication

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re:                        ) | |
|           ) | |
| **DAVID MICHAEL MARTINEZ and**   ) | Case No. 09-40886 |
| **MICHELLE CHRISTINE MARTINEZ,**   ) | |
|          ) | |
|        **Debtors.**     ) | |
| _____) | |
| **DAVID MICHAEL MARTINEZ (deceased)** ) | |
| **MICHELLE CHRISTINE MARTINEZ,**   ) | |
|          ) | |
|        **Plaintiffs,**     ) | |
|          ) | |
| **v.**                          ) | Adv. No. 10-7027 |
|          ) | |
| **MORTGAGE ELECTRONIC**        ) | |
| **REGISTRATION SYSTEMS, INC. and**   ) | |
| **COUNTRYWIDE HOME LOANS, INC.**   ) | |
|          ) | |
|        **Defendants.**     ) | |
| _____) | |

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING COUNTRYWIDE AND MERS' MOTIONS

**FOR SUMMARY JUDGMENT, AND OVERRULING PLAINTIFF'S OBJECTION TO PROOF OF CLAIM OF COUNTRYWIDE**

This matter is before the Court on the Motion for Summary Judgment[1] filed by Plaintiff, Michelle Martinez, now Graham ("Debtor," "Plaintiff" or "Graham"),[2] on her Complaint to Determine Secured Status pursuant to 11 U.S.C. § 506(a)[3] and the Cross-Motions for Summary Judgment filed by Defendant Mortgage Electronic Registration Systems, Inc. ("MERS")[4] and Defendant Countrywide Home Loans, Inc. ("Countrywide").[5] Debtors' Objection to the Proof of Claim filed by Countrywide, in the main case, is also ripe for decision.[6]

Debtor claims she is entitled to judgment against MERS because she owes no debt to MERS, and thus the mortgage she executed to MERS should be stripped off the real property and held to not encumber her home. She further claims she is entitled to an order sustaining her objection to the Proof of Claim filed by Countrywide, which was filed as a secured claim, and for summary judgment in this Adversary Proceeding on her claim that the debt she owes Countrywide is effectively unsecured, since it is not the holder of the mortgage originally intended to secure that note.

---

[1] Doc. 39.

[2] David Martinez was an original plaintiff to this action, and a debtor in the underlying bankruptcy proceeding, but because he died in August 2010, the Court will refer to "Plaintiff" or "Debtor" in the singular. In addition, Ms. Graham signed the note and mortgage using the name "Graham." In deposition testimony provided to the Court, she indicated she now again uses the name "Graham," even though the Adversary Proceeding was filed in the name of "Martinez."

[3] Doc. 1.

[4] Doc. 47.

[5] Docs. 45. The Affidavit of William C. Hultman indicates that Countrywide has since changed its name to BAC Home Loans Servicing, LP. *See* Exhibit 1 at ¶ 10 attached to Doc. 48.

[6] Doc. 106 in main case.

2

This matter is related to Debtor's underlying bankruptcy proceeding, and the parties have consented to the trial and entry of a final order by this Court. Therefore, the Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157(c)(2)and 1334(a) and (b).

## I.    FINDINGS OF FACT

The material facts are essentially uncontroverted. On August 12, 2002, Michelle Graham executed and delivered a promissory note ("Note") to Countrywide whereby she promised to pay Countrywide the sum of $140,000.00, plus interest.[7]  The loan was made to enable Graham to purchase real property located on Nottingham Road in Topeka, Kansas, which she claimed as her exempt homestead in this bankruptcy proceeding. Countrywide has remained the holder of that Note since Graham signed it.[8]

To secure repayment of the debt to Countrywide and its successors and assigns, Graham signed a Mortgage on the Nottingham property to "MERS, as the nominee for Countrywide and its successors and assigns."  The Mortgage specifically identifies the Lender as Countrywide Home Loans, Inc., the same Lender identified in the Note, the amount of the Mortgage is identical to the amount borrowed under the Note, and the Mortgage instrument, itself, grants Countrywide various rights. Therefore, based on the language appearing in the four corners of the Note and Mortgage,

---

[7]The Note and Mortgage were signed only by Michelle Graham. In her application for the loan, she held herself out as a single person, but she has since that time held herself out as having a common law marriage with David Martinez at the time the loan was made and since. Each bankruptcy was filed in both names.

[8]*See* Statement of Additional Uncontroverted Facts, Doc. 48 at ¶ 2 ("the Note remains payable to the order of Countrywide and Countrywide is in possession of the original Note," which fact Debtor admitted was uncontroverted.)

3

all the parties to the transaction unambiguously intended for the Note to be secured by this Mortgage.[9]  The Mortgage further states that:

> MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, <u>including, but not limited to, the right to foreclose and sell the Property</u>; and to take any action required of Lender.[10]

The Mortgage was properly and timely recorded with the Shawnee County Register of Deeds.

The MERS System, a database owned by MERSCORP, Inc., the parent company of MERS, is designed to allow its members, which include originators, lenders, servicers and investors, to accurately and efficiently track transfers of servicing rights and beneficial ownership in the notes that are secured by the mortgages and deeds of trust held by MERS.[11]  At all relevant times, Countrywide was and is a member of MERS.

Pursuant to the MERS' Rules of Membership, Rule 2, Section 5, Countrywide appointed MERS to act as its agent to hold the Mortgage as "nominee" on Countrywide's behalf, and on behalf of Countrywide's successors and assigns.[12]  The essence of MERS' business is to hold legal title to mortgages (or deeds of trust in non-judicial foreclosure states) as an agent for the lender and the lender's successors and assigns, with such capacity duly recorded in the appropriate county land records.  MERS was created to eliminate the need for mortgage assignees to record assignments to

---

[9]Plaintiff acknowledged multiple times in her deposition that she intended to borrow money from Countrywide and that she intended to grant a Mortgage on the Property to secure repayment of that loan.  *See* Statement of Additional Uncontroverted Facts ¶¶ 8-9 contained in MERS' brief, Doc. 48.  Although she claims she did not intend to give a Mortgage to anyone but Countrywide, the fact is that the Mortgage unequivocally names MERS as the mortgagee.

[10]Mortgage, Exhibit 1, at p. 3, attached to Doc. 46 (emphasis added).

[11]Affidavit of William C. Hultman, Exhibit 1, at ¶ 8, attached to Doc. 48.

[12]MERS' Terms and Conditions expressly state that "MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes."

4

protect their interests and to thereby facilitate the purchase and sale of mortgages in the secondary market.

In September 2004, MERS filed a foreclosure action against Debtor in state court because the last regular payment Graham had made was in May 2004. MERS dismissed that action two months later pending the outcome of Debtor's Chapter 13 bankruptcy case that had been filed on August 27, 2004. In February 2005, however, that bankruptcy was dismissed prior to confirmation when Debtor failed to timely file an amended plan, as the Court had required.[13]

Three months later, in May 2005, Debtor filed a second bankruptcy petition. She again failed to timely pay the amounts due on the Note, and MERS, again acting as nominee for Countrywide and with the consent of Debtor, was granted relief from the automatic stay to allow it to foreclose the Mortgage. The second bankruptcy was also dismissed for non-payment, and MERS then filed a second foreclosure petition, both occurring in January 2006.

Six months into that litigation, Debtor joined Countrywide as a party to that state court action so she could assert several third party claims against it. Debtor alleged that Countrywide and MERS had committed violations of the Kansas Consumer Protection Act, and that it had committed fraud

---

[13]Doc. 47 in Case No. 04-42364.

in connection with her efforts to obtain a loan modification.[14]  During that litigation, Debtor consistently asserted that because MERS was Countrywide's agent, it should be responsible for the same acts as Countrywide.[15]

In February 2008, the state court granted summary judgment to MERS on its foreclosure claim, and to both MERS and Countrywide on Debtor's counterclaims and third party claims, respectively, against them.  After subsequent proceedings, the state court finally entered its Journal Entry of Judgment and Foreclosure in January 2009, which allowed foreclosure of MERS' Mortgage on the property.  Debtor timely appealed this decision to the Kansas Court of Appeals.

At no time did Debtor raise before the trial court the argument that MERS could not enforce the Mortgage because it had been separated or "split" from the Note, or that MERS lacked standing to bring the action.  In fact, Plaintiff insisted otherwise, noting that MERS could not be "separated from Countrywide.  MERS derives its very existence in this case from the mortgage...."[16]

Similarly, Debtor did not raise this issue before the Court of Appeals until seven months after she filed the appeal, and all the briefing had been completed.  In fact, in her brief to that court, she again vigorously argued that MERS was "... the agent and nominee of Countrywide, in dealings with Ms. Graham and Mr. Martinez concerning the proposed refinancing and the request for stay relief

---

[14]The counterclaims and third party claims dealt with Debtor's assertion that MERS and Countrywide had fraudulently induced her to grant relief from stay with the promise of offering her a loan modification. These were the only issues that appear to have been contested during this litigation.

[15]In fact, as late as June 5, 2009, in opposing MERS' Motion for Relief from stay in the pending bankruptcy case, Debtor again confirmed her belief that Countrywide was the principal and MERS was its agent. *See* Doc. 17 in Case No. 09-40886.

[16]See Brief of Appellants before the Kansas Court of Appeals at pp.7, 25-26, Exhibit 4 attached to Doc. 48.

6

sought in the bankruptcy case."[17]  For that reason, MERS had neither the need, nor the opportunity, at the trial court level to address the issue of its agency status, or to provide evidence in support of its assertion that it had standing to bring the foreclosure action.

The Kansas Court of Appeals issued a per curiam decision in April 2010, dismissing the foreclosure action on the basis that no evidence existed in the record before it that MERS had standing to pursue foreclosure of the Mortgage.  This holding was based on the finding that because MERS did not hold the underlying promissory Note, Debtor's failure to pay on that Note did not result in pecuniary injury to MERS.  The appellate court held that the district court therefore did not have jurisdiction to grant judgment of foreclosure to MERS as a result of this lack of standing, and dismissed the foreclosure action.[18]  The Court of Appeals made no finding that Third Party Defendant Countrywide, which was not a party to the foreclosure portion of the state court action, lacked standing, and made no findings about whether Countrywide was the holder of the Note.

Debtor defaulted on this loan, made in 2002, by August of 2004, and has made relatively few payments on the subject Note since then.[19]  She acknowledged in all three bankruptcy proceedings

---

[17] *See id.* at pp.7, 25-26.  Debtor first raised the issue in the form of a letter to the Court of Appeals dated October 28, 2009.  *See* Doc. Exhibit 5 attached to Doc. 48.

[18] The Court of Appeals did affirm the district court's order granting summary judgment to both MERS and Countrywide on Graham's fraud and Kansas Consumer Protection Act counterclaims against MERS, and her third party claims against Countrywide.  She did not appeal this order.

[19] Although the extent of the default is not material to the issues (other than to establish whether creditor lacks adequate protection because of the default), the Court does note that in the creditors' Motion for Relief from Stay in the main case, filed in June 2009, it alleged Debtor owed over $230,000, which included more than $50,000 in interest and in excess of $26,000 in real estate taxes and property insurance, which debt had accrued while Debtor filed successive bankruptcies.  *See* Docs. 11 and 24 in main bankruptcy case.  In her third bankruptcy petition, filed in 2009, Debtor listed the value of the real estate at $157,200 in Schedule A.  Accordingly, there does not appear to be a dispute that there is no equity in the subject real property if the Note is secured by the Mortgage.

7

that Countrywide was the holder of a secured claim until about seven months after she filed the state court appeal.

Additional facts will be discussed below, when necessary.

## II.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[20]  In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[21]  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[22]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[23]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[24]  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[25]

---

[20]Fed. R. Civ. P. 56(c).  Fed. R. Civ. P. 56(c) is made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7056.

[21]*Lifewise Master Funding v. Telebank,* 374 F.3d 917, 927 (10th Cir. 2004).

[22]*Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[23]*Id.* (citing *Anderson,* 477 U.S. at 248).

[24]*Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[25]*Id.* (citing *Celotex,* 477 U.S. at 325).

8

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[26]  To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[27]

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[28]

## III.    ANALYSIS

Debtor filed this adversary proceeding seeking a determination that because she owes no debt to MERS (since it does not hold the Note), no one may enforce the Mortgage.  Countrywide was added to this proceeding as an intervening defendant upon the joint motion of all parties,[29] and Debtor claims that Countrywide's Note is unsecured on the basis that the Mortgage was "split" from the Note.  The central issue in this case is what effect, if any, the granting of the Mortgage to MERS has on Countrywide's right to enforce the terms of the promissory Note.

---

[26]*Id.* (citing Fed.R.Civ.P. 56(e)).

[27]*Diaz v. Paul J. Kennedy Law Firm,* 289 F.3d 671, 675 (10th Cir. 2002).

[28]*Celotex,* 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

[29]Debtor also objected to Countrywide's Proof of Claim in the main bankruptcy case (Doc. 106).  The parties recognized that identical issues would be involved in this Adversary Proceeding, so the matters have been tracked together, and this decision resolves that objection.

9

As a preliminary matter, since interests in property are governed by state law,[30] the Court

turns to Kansas law to determine this issue. Debtor claims that the Kansas Court of Appeals has

already decided all issues in this case, and that both Defendants are forever barred by that decision

from foreclosing the Mortgage in an attempt to collect the Note. However, the Court finds that

Debtor is reading the state court precedent in Kansas far too broadly. To address Debtor's claims,

it is important to examine what the Kansas decisions dealing with MERS have held— and perhaps

more importantly, what they have not.

The initial Kansas case to consider the issue of splitting a note and mortgage in the MERS

context is *Landmark National Bank v. Kesler*.[31] In *Landmark*, the homeowner obtained a loan from

Landmark National Bank ("Landmark"). That loan was secured by a properly recorded mortgage

to Landmark. Approximately one year later, Kesler obtained a loan from Millennia Mortgage Corp.

("Millennia"). To secure this loan, Kesler granted a second mortgage to MERS, acting solely as the

nominee for Millennia. This mortgage was also properly recorded. The second note was then

assigned to Sovereign Bank, although that assignment was never recorded. MERS, acting solely as

the nominee for Millennia (or its assignees), remained the mortgage holder of record.

In 2006, Landmark filed a petition to foreclose Kesler's property, serving and naming as

defendants only Kesler and Millennia. Landmark did not serve notice of the litigation on MERS or

---

[30]*Butner v. United States*, 440 U.S. 48, 54-55 (1979).

[31]289 Kan. 528 (2009). *But see*, e.g., *McGinnis v. GMAC Mortg. Corp.*, 2010 WL 3418204 *3 (D. Utah 2010) (holding that *Landmark* failed to "recognize the agency relationship between MERS and the lender that is created by the language in the Deed of Trust designating it as beneficiary;" *Blau v. Am.'s Serv. Co.*, 2009 WL 3174823 * 8 (D. Ariz. 2009) (holding that the language of the deed of trust executed to MERS did support a finding that MERS was authorized by the lender to act on its behalf and exercise the rights that the lender held under the deed of trust); *Chilton v. Med. Nat. Mortg. Ass'n*, 2009 WL 5197869 (E. D. Cal. 2009) (holding *Landmark* merely stands for the proposition that one possessing the deed of trust cannot foreclose on it without also obtaining some interest in the note or obtaining permission to act as agent of the note-holder); *In re Huggins*, 357 B.R. 180 (Bankr. D. Mass 2006) (holding that MERS has standing to bring relief from stay motion as nominee holding mortgage for entity that held the note).

Sovereign. No defendant answered, and the district court entered default judgment against Kesler and Millennia.

The property was sold at a Sheriff's sale on November 14, 2006. On that same date, Sovereign filed an answer to the foreclosure petition, claiming a second mortgage on the property as the successor in interest to Millennia. Sovereign also filed a motion to set aside or vacate the default judgment on the basis that MERS was a contingently necessary party pursuant to K.S.A. 60-219(a). Sovereign claimed that because Landmark failed to name MERS as a defendant, Sovereign did not receive notice of the proceedings.

The trial court entered an order finding that MERS was not a real party in interest and that Landmark was therefore not required to name it as a party to the foreclosure action. The court found that MERS was merely an agent or representative for Millennia, and that Sovereign's failure to register its interest with the local Register of Deeds preluded it from asserting any rights to the mortgage after the judgment was entered.

The Kansas Supreme Court affirmed the trial court, finding that MERS was little more than a "straw man" for Millennia (and later Sovereign). As such, the court found that MERS held no rights to the property and suffered no prejudice by not being served with the foreclosure proceedings, as it would have had no defense to the foreclosure petition and could not have argued that Kesler was in default to it because it did not hold the note. The court thus found that the trial court did not abuse its discretion in refusing to set aside the default judgment.

Soon after the *Landmark* decision was issued, a similar result was reached by the Kansas Court of Appeals in a case directly related to this adversary proceeding. In *Mortgage Electronic*

*Registration Systems, Inc. v. Graham*,[32] the Kansas Court of Appeals addressed the authority of MERS to bring a foreclosure action. The parties and property in the *Graham* case are the same as in the instant case.

In *Graham*, the appellate court found that Michelle Graham executed a promissory note with Countrywide to purchase her home and that the named mortgagee in the transaction was MERS, acting solely as nominee for Countrywide. Graham stopped making payments on the note in June 2004, and MERS filed a petition to foreclose on the property. As noted above, at no time did Graham assert that MERS was not a real party in interest, and thus this was not an issue heard or decided by the trial court, or on which MERS had any need to present evidence.

After the district court entered summary judgment in favor of MERS on the foreclosure petition, and on Graham's consumer protection and fraud claims,[33] Graham appealed. The Kansas Court of Appeals, relying heavily on *Landmark*, found that MERS lacked standing to bring the foreclosure action because it did not have an interest in the note, and thus was not harmed by Graham's failure to make the payments required by the note. The court stated:

> [I]n the instant case, this mortgage states that MERS acts "solely as nominee" for Countrywide. There is no mention of MERS in the promissory note, and there is no evidence that Countrywide assigned the note to MERS. Thus, there is no evidence that MERS has suffered any injury caused by Graham and Martinez' failure to make payments on the promissory note. The note does not obligate Graham and Martinez to make payments to MERS. Further, there is no indication that MERS possesses any interest in the promissory note, and given *Landmark's* "straw man" characterization of MERS's relationship to lenders, 289 Kan. at 539, 216 P.3d 158, <u>there is no evidence that MERS received permission to act as an agent for Countrywide</u>.

---

[32]44 Kan. App. 2d 547 (Kan. App. 2010).

[33]This was a partial summary judgment, resolving only a portion of the claims and counterclaims between the parties. Those additional claims are not relevant to the matter currently before the Court.

12

Having suffered no injury, MERS lacks standing to bring a foreclosure action. Accordingly, the district court did not have jurisdiction to grant MERS's petition to foreclose the mortgage.[34]

The Kansas courts, in both *Landmark* and *Graham*, addressed the issue of what rights MERS had to enforce the terms of the respective notes and mortgages. Both cases held that MERS, as the holder of nothing more than bare legal title to the mortgage, had no rights to enforce the note and had not been harmed by the non-payment of the note. *Graham* also specifically relied on the fact that MERS had not presented sufficient evidence to show it was an agent of Countrywide.

However, in neither of those cases did the court directly address the rights of the holder of the note. The *Landmark* opinion does contain some general discussion concerning the possibility of the note and mortgage being split (which will be discussed in more detail below), and what effect that would have on the rights of the holder of the note. But the rights of the holder of the note was not the issue before either appellate court, and at no time did either the Kansas Supreme Court or the Kansas Court of Appeals hold or even suggest: 1) that the holder of the note lacked the authority to foreclose on the mortgage; 2) that the note became unsecured when the mortgage was given to MERS, or 3) that a note holder in Kansas may not legally authorize an agent to foreclose a mortgage on its behalf. In fact, on the last point, the Kansas Court of Appeals expressly found that "there [was] no evidence that MERS received permission to act as an agent for Countrywide"—suggesting that if such evidence existed, the holding might be different.[35]

Therefore, the Court rejects Debtor's arguments that the decision of the Kansas Court of Appeals automatically entitles her to judgment against Countrywide or MERS, as a matter of law,

---

[34]*Graham*, 44 Kan. App.2d at 554 (emphasis added).

[35]*Graham*, 44 Kan. App. 2d at 554.

13

on the basis of *res judicata*. *Res judicata* requires the satisfaction of four elements: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the party must have had a full and fair opportunity to litigate the claim in the prior suit.[36]

Two of the required four elements are not met here. First, the prior suit did not end with a judgment on the merits. It was dismissed for lack of jurisdiction.[37] Second, MERS and Countrywide did not have a full and fair opportunity to litigate the claim. Because Graham insisted that MERS was the agent of Countrywide, MERS had no need to present evidence to establish this fact, and did not. The Kansas Court of Appeals clearly left open the possibility that if there had been evidence of an agency relationship, the result might have been different. The decision was based on a lack of evidence when no party was given the opportunity to present the very evidence that was lacking. It would thus be wholly unfair to hold that MERS and Countrywide are bound by that decision.

As to *Landmark*, although the issues in that case arose in a different posture, and were thus somewhat different from those presented in this case, the Kansas Supreme Court did discuss the

---

[36]*In re Mersmann*, 505 F.3d 1033, 1049 (10th Cir. 2007), *abrogated on other grounds by United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010).

[37]*See In re Care & Treatment of Johnson*, 32 Kan. App. 2d 525, 531 (2004) (noting that "courts have repeatedly recognized that a dismissal for lack of subject matter jurisdiction generally is not a dismissal on the merits . . . .") and K.S.A. 60-241(b) (stating that "a dismissal under this paragraph and any dismissal not under this section, except one for lack of jurisdiction . . . operates as an adjudication on the merits."). Debtor, citing *Johnson*, contends that although the case was dismissed for lack of jurisdiction, *res judicata* still applies as to the issue of jurisdiction itself. Although *Johnson* does contain language that supports Debtor's argument, when those statements are read in the context of the opinion itself, the Court finds *Johnson* is not applicable to this case. Unlike *Johnson*, the Court of Appeals in this case found there was no jurisdiction based upon a lack of evidence in the record. That is different than a finding of no jurisdiction based upon a full examination of the pertinent facts and evidence available. In fact, the court in *Johnson* specifically allowed the reconsideration of the jurisdictional issue based upon factual considerations that arose following the initial case that was dismissed. *Johnson*, 32 Kan. App. 2d at 531-32. The Court does not read *Johnson* to stand for the proposition that when a case is dismissed based upon a lack of evidence on the issue of subject matter jurisdiction that parties are forever barred from presenting that evidence in subsequent litigation — especially when the parties were not given an opportunity to present that evidence initially.

14

effect that splitting a note and mortgage would have on the enforceability of the mortgage and the secured status of the note. In doing so, the court relied on a recent Missouri case, *Bellistri v. Ocwen Loan Servicing, LLC.*[38] *Bellistri*, in turn, relied extensively on the Restatement (Third) of Property (Mortgages) on which Kansas courts have also often relied.[39]

"Generally, a mortgage loan consists of a promissory note and security instrument, usually a mortgage or deed of trust, which secures payment on the note by giving the lender the ability to foreclose on the property."[40] The Restatement sets forth two basic principles that are relevant in this case:

1.     A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise,[41] and

2.     A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures.[42]

The first principle is explained more fully in the comment section of the Restatement, as follows:

> The essential premise of this section is that it is nearly always sensible to keep the mortgage and the right of enforcement of the obligation it secures in the hands of the same person. This is so because separating the obligation from the mortgage results in a practical loss of efficacy of the mortgage. . . . When the right of enforcement of the note and the mortgage are split, the note becomes, as a practical matter,

---

[38] 284 S.W.3d 619 (Mo. Ct. App. 2009).

[39] *See e.g. Am, Gen. Fin. Serv., Inc. v. Carter*, 29 Kan. App. 2d 683, 689 (2008); *Fidelity Bank v. King*, 281 Kan. 1278, 1281 (2006); and *Bankers Trust Co. v. United States,* 29 Kan. App. 2d 215, 218 (2001).

[40] *Bellistri*, 284 S.W. 3d at 630.

[41] Restatement (Third) of Property (Mortgages) § 5.4(a). United States District Judge Lungstrum, interpreting Kansas law, recently noted in *Renkemeyer v. Mortg. Elec. Registration Sys., Inc.*, 2010 WL 3878582 at *2 (D. Kan. 2010) that "[t]he law generally understands that a mortgagee is not distinct from a lender: a mortgagee is '[o]ne to whom property is mortgaged: the mortgage creditor, or lender.' Black's Law Dictionary 1034 (8th ed. 2004). By statute, assignment of the mortgage carries with it the assignment of the debt. K.S.A. 58-2323."

[42] *Id.* § 5.4(c).

unsecured. This result is economically wasteful and confers an unwarranted windfall on the mortgagor.

The comment section also provides further explanation of the second principle, as well as providing guidance to the courts on how the provision should be applied:

> As mentioned, in general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation. For example, assume that the original mortgagee transfers the mortgage alone to A and the promissory note that it secures to B. Since the obligation is not enforceable by A, A can never suffer a default and hence cannot foreclose the mortgage. B, as holder of the note, can suffer a default. However, in the absence of some additional facts creating authority in A to enforce the mortgage for B, B cannot cause the mortgage to be foreclosed since B does not own the mortgage.
>
> This result is changed if A has authority from B to enforce the mortgage on B's behalf. For example, A may be a trustee or agent of B with responsibility to enforce the mortgage at B's direction. A's enforcement of the mortgage in these circumstances is proper. . . . **The trust or agency relationship may arise from the terms of the assignment, from a separate agreement, or from other circumstances. Courts should be vigorous in seeking to find such a relationship**, since the result is otherwise likely to be a windfall for the mortgagor and the frustration of B's expectation of security.[43]

Debtor's position is that because the Note was made in favor of Countrywide, and the Mortgage in favor of MERS, the Note and Mortgage were irrevocably split from the inception. That split, Debtor argues, rendered the Mortgage ineffective, for the reasons described in the Restatement.

Defendants counter that the Mortgage and the Note were never split because MERS was an agent of Countrywide, so even under the law set forth in the Restatement, the Mortgage still effectively secured the Note. Judge Federman from the Western District of Missouri recently agreed with this analysis in a case with similar issues. In *In re Tucker*,[44] the lender filed a motion for relief

---

[43]*Id*. at § 5.4, Comment.(e) (emphasis added).

[44]___ B.R. ___, 2010 WL 3733916 (Bankr. W.D. Mo. 2010).

16

from stay to foreclose on a deed of trust, and the Trustee objected based on an argument that the lender was not the holder of both the note and the deed of trust, and therefore the two instruments had been split and the deed of trust was unenforceable. Judge Federman, after taking evidence, held that MERS was clearly an agent for the lender at the time the instruments were made, and therefore the deed of trust remained enforceable. Therefore, according to Judge Federman, the note and deed of trust were never really split, as the deed of trust was held by an agent of the holder of the note, who could act to foreclose the it if the lender (the principal in the agency relationship) so directed.

The Court finds that the *Tucker* analysis and holding are entirely consistent with the Restatement (Third) of Property (Mortgages), upon which both Missouri and Kansas courts have heavily relied in prior decisions.[45] The Restatement does not say that in all circumstances the assignment of the note to one entity and the assignment of the mortgage to another entity renders the mortgage unenforceable and the note unsecured. Instead, the Restatement explains this is true <u>absent an agency relationship</u> between the holder of the note and the holder of the mortgage, because the note "as a practical matter" becomes unsecured because the holder of the note has no authority to compel the holder of the mortgage to act on its rights. However, when the holder of the mortgage is an agent of the holder of the note, this result does not apply.[46]

---

[45]Debtor argues that this Court should not follow *Tucker* because it was based upon Missouri law, rather than Kansas law. Although the Court agrees that *Tucker* is not binding on this Court, it does find the decision persuasive, especially given the fact that the Kansas Supreme Court itself relied upon the Missouri case of *Bellistri v. Ocwen Loan Servicing, LLC*, when it decided *Landmark*, and given the fact that both Judge Federman and the Kansas Supreme Court relied extensively on the Restatement (Third) of Property (Mortgages) in their analysis.

[46]*Graham*, 44 Kan. App. 2d 554. Again, Graham consistently asserted in the state court proceedings that MERS **was** an agent of Countrywide when it was trying to persuade the courts that Countrywide should be held liable for any misrepresentations or fraudulent acts allegedly committed by MERS or its representatives. *See* Doc. 46-9 pp. 4-5 (wherein Plaintiff argued that "MERS is no more than the agent for Countrywide....").

17

Accordingly, whether Countrywide and MERS have the ability to enforce the Note and Mortgage hinges on their relationship. If an agency relationship exists between those two parties such that Countrywide, as principal, can require its agent, MERS, to assign the Mortgage to it, then the Note remains secured and Countrywide can bring a foreclosure action. Likewise, the agreement between these entities, as fully described in the exhibits filed in support of the summary judgment motion (and which Graham does not seriously contest) could also result in a scenario where Countrywide could assign the Note to MERS, and MERS (as the new holder of the Note) could bring the foreclosure action on Countrywide's behalf.[47] Although the Kansas Supreme Court did address the relationship between MERS and its member lenders in *Landmark*—likening MERS to a "straw man"—the court did not specifically hold that no agency relationship existed. Similarly, in *Graham*, the Kansas Court of Appeals merely held that "there is no evidence that MERS received permission to act as an agent for Countrywide."[48]

Countrywide and MERS have presented this Court with sufficient undisputed evidence to establish that MERS was acting as an agent for Countrywide. As noted by MERS in its response to Debtor's motion for summary judgment, MERS' role as mortgagee and MERS' relationship with Countrywide and its successors and assigns, as nominee, is clearly set forth in the first complete paragraph on page 3 of the Mortgage, itself, and in signing the Mortgage, Debtor admitted she understood that the relationship between her Lender—Countrywide, and MERS would allow MERS itself to bring a foreclosure action on Countrywide's behalf.

---

[47] And as noted above, the mortgage expressly provides that "MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender."

[48] Given the fact that the standing issue was never raised at the district court level, but was instead first raised on appeal after the close of all briefing, rather than at the trial level, the lack of evidence on this issue is understandable.

18

In addition to the express language contained in the Mortgage, MERS has submitted additional evidence, through the affidavit of its Treasurer, William Hultman, that further substantiates the fact that MERS was acting as an agent of Countrywide while holding the Mortgage. Pursuant to Section 2 of the MERS Terms and Conditions,[49] "MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time." Section 3 also provides that "MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes."[50]

Based upon this evidence, the Court concludes that MERS was clearly acting as an agent for Countrywide at all relevant times. MERS held the Mortgage as "nominee" for Countrywide, and agreed to act on Countrywide's behalf and at Countrywide's direction with respect to the Mortgage. The fact that MERS and Countrywide chose to use the word "nominee," rather than "agent," does not alter the underlying relationship between the two parties.[51] There is no requirement that parties

---

[49] Affidavit of William C. Hultman, Exhibit 1 attached to Doc. 48.

[50] Just as Judge Federman in the *Tucker* case held that there existed "more than sufficient [evidence] to create an agency relationship between MERS and the Lender and its successors in Missouri, regardless what term they used to describe that relationship," I hold that Kansas law supports a finding that the evidence presented here creates the same agency relationship between MERS and Countrywide. *In re Tucker*, 2010 WL 3733916 at *6. *See Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. 528, 535 (1996) (holding that an agency relationship in Kansas can be created when "the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act" or by implied agency "where the principal and agent intend to create a relationship whereby when the agent acts on this authority, others will believe in and rely on the agent's acts."). The Court finds that the agreement between MERS and Countrywide was sufficient to create an express agency relationship, but even if not, their actions were sufficient to establish an implied agency.

[51] Blacks Law Dictionary defines a nominee as "[a] person designated to act in place of another, usu. in a very limited way," or "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." Blacks Law Dictionary (9th ed. 2009). Similarly, Blacks defines an agent as "[o]ne who is authorized to act for or in place of another; a representative." *Id*. It is difficult to imagine a situation where one party acting as a "nominee" under the legal definition would not also clearly fit within the definition of an "agent." *See also Renkemeyer v. Mortg. Elec. Registration Sys., Inc.*, 2010 WL 3878582 at *2 n.3 (noting it was inconsistent for plaintiff to argue that a nominee is not an agent under the MERS system to support a lack of standing argument, and declining to dismiss MERS from a quiet title action, finding that under Rule 19, MERS claimed a sufficient interest in the quiet title action to remain a party, and MERS' absence could impair its ability to protect that interest).

to an agency relationship specifically refer to the agent by the name "agent." In fact, an agency can be created in Kansas even when the principal specifically denies that the agent is in fact an agent.[52] Here, the choice to use the term "nominee" rather than "agent" does not alter the relationship between these two parties, especially given the fact that the two terms have nearly identical legal definitions.

Because MERS was holding the Mortgage in question as an agent of Countrywide, the Court finds that the Note and Mortgage were never split, and remain enforceable. Countrywide's interest in the Note remains secured by the Mortgage.[53] MERS is required to act on behalf of and at the direction of Countrywide, and, therefore, the concerns raised in the Restatement (Third) of Property (Mortgages) about the enforceability of the Note are eliminated.

The Court finds that Countrywide's interest is secured and it has the right to enforce the Note and Mortgage through its agent, MERS, or on its own (by directing its agent to assign the mortgage to it). Debtor's objection to the Proof of Claim filed by Countrywide is, therefore, overruled. Having determined all of the issues raised in this adversary proceeding, the Court will enter summary judgment in favor of the Defendants. The Court has found that Countrywide's interest is secured by the Mortgage, and that MERS holds that Mortgage as an agent for Countrywide.

In addition, the Court rejects Debtor's contention that procedurally, Countrywide and MERS were required by Fed. R. Bankr. P. 7013 to bring a foreclosure action in this Court as a compulsory

---

[52] *Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. at 535.

[53] Based on the holding that Countrywide's claim remains secured by the mortgage on the property, the Court does not need to address MERS' claim that Debtor is bound by the provisions of her Chapter 13 Plan, in which she affirmatively provided for Countrywide to be treated as a secured creditor. Similarly, the Court does not need to further discuss the issues raised by MERS concerning Debtor's attempts to strip off the mortgage pursuant to § 506. Those issues are both resolved by the Court's finding that Countrywide continues to hold a security interest in the property, through the mortgage held by its agent, MERS.

20

counterclaim. Rule 7013 incorporates Fed. R. Civ. P. 13 with some restrictions. Rule 13(a) states that a party must raise a counterclaim against an opposing party if the claim (1) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (2) does not require adding another party over whom the court cannot acquire jurisdiction.[54] Those provisions are limited by Rule 7013, which states that "a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief."[55]

In this case, the order for relief was entered upon the filing of the bankruptcy petition on June 1, 2009.[56] It is clear that their actions arose prior to the entry of the order for relief, and therefore their claim for foreclosure is not a compulsory counterclaim. Conversely, Debtor asserts that any claim MERS and Countrywide may have necessarily arose after the entry of the Kansas Court of Appeals decision in *Graham*, which was on April 30, 2010. Debtor's position is based upon the argument that the *Graham* decision is *res judicata* as to MERS and Countrywide's foreclosure actions, so any newly filed foreclosure must have arisen after *Graham* was decided. Because the Court has already held that MERS and Countrywide are not barred from pursuing a foreclosure action on *res judicata* grounds, as discussed more fully above, the Court finds that Debtor's position with regard to Rule 7013 is without merit. MERS and Countrywide's claim for foreclosure arose prior to the entry of the order for relief, and, therefore, Rule 7013 does not require the foreclosure claim be brought as a compulsory counterclaim.

---

[54]Fed. R. Civ. P. 13(a).

[55]Fed. R. Bankr. P. 7013.

[56]See 11 U.S.C. § 301(b).

## IV.     CONCLUSION

The Court finds that summary judgment should be entered in favor of the Defendants in this action.  The Restatement upon which Kansas courts have often relied instructs that courts should be vigorous in seeking to find an agency relationship in these circumstances lest the mortgagor receive a windfall not intended by the parties at the inception of the transaction.  Although the Mortgage was held by MERS and the Note was held by Countrywide, because the uncontroverted evidence unequivocally demonstrates that MERS was acting as an agent for Countrywide, no "fatal" splitting of the Note and Mortgage occurred.  Therefore, Countrywide continues to have the ability to enforce its Note as secured by the Mortgage, which is currently held in the name of its agent, MERS.

**IT IS THEREFORE, BY THE COURT ORDERED** that Debtor's Motion for Summary Judgment[57] is denied.

**IT IS FURTHER ORDERED** that summary judgment is entered in favor of Defendants Mortgage Electronic Registration Systems, Inc. and Countrywide Home Loans, Inc.  Relief from stay is granted, since standing is the only defense Plaintiff raised to oppose stay relief.

**IT IS FURTHER ORDERED** that Debtor's objection to the Proof of Claim of Countrywide is overruled.

###

---

[57]Doc. 39.